## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| RICHARD A. CHICHAKLI, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 14-2018 (CKK) |
| | : | |
| DONALD J. TRUMP, *et al.*, | : | |
| | : | |
| Defendants.[1] | : | |

## MEMORANDUM OPINION

This matter is before the Court on the Official Capacity Defendants' Motion to Dismiss

[ECF No. 18].  For the reasons discussed below, the motion will be granted.

## I. BACKGROUND

Plaintiff is a United States citizen, Compl. ¶¶ 1, 13, who has been

> tried [in the United States District Court for the Southern District of
> New York] and convicted by a jury on . . . nine counts of an
> indictment charging as follows: one count of conspiracy to engage
> in business practices prohibited by the International Emergency
> Economic Powers Act . . . , in violation of 50 U.S.C. § 1705 and 18
> U.S.C. § 371; one count conspiracy to commit money laundering, in
> violation of 18 U.S.C. § 1956(h); one count of conspiracy to commit
> wire fraud, in violation of 18 U.S.C. § 1349; and six counts of wire
> fraud, in violation of 18 U.S.C. §§ 1343, 2.

---

[1]  Pursuant to Federal Rule of Civil Procedure 25(d), the Court substitutes the current President of the United States, Secretary of the Treasury, and Director of the Office of Foreign Assets Control as defendants in this case.

*United States v. Bout*, 651 F. App'x 62, 63 (2d Cir.), *cert. denied sub nom. Chichakli v. United States*, 137 S. Ct. 412 (2016).[2]  He is serving a sentence of 60 months' imprisonment on each count, with all sentences running concurrently.  *See* Judgment in a Criminal Case, *United States v. Chichakli*, No. S3 09-CR-1002-02 (S.D.N.Y. Dec. 8, 2014) at 3.

## A. Liberian Sanctions Program

The International Emergency Economic Powers Act ("IEEPA"), *see* 50 U.S.C. §§ 1701-07, "authorizes the President to declare a national emergency when an extraordinary threat to the United States arises that originates in substantial part in a foreign state."  *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 159 (D.C. Cir. 2003); *see* 50 U.S.C. § 1701(a) (authorizing declaration of national emergency "to deal with any unusual and extraordinary threat, which has its source in whole or substantial part outside the United States, to the national security, foreign policy, or economy of the United States").  Such a declaration "clothes the President with extensive authority set out in 50 U.S.C. § 1702."  *Holy Land Found. for Relief & Devel.*, 333 F.3d at 159.  For example, the President may:

> investigate, block during the pendency of an investigation, regulate, direct and compel, nullify, void, prevent or prohibit, any acquisition, holding, withholding, use, transfer, withdrawal, transportation, importation or exportation of, or dealing in, or exercising any right,

---

[2]  The United States Attorney's Office for the Southern District of New York issued a press release on December 4, 2014, available at https://www.justice.gov/usao-sdny/pr/richard-ammar-chichakli-co-conspirator-international-arms-dealer-viktor-bout-sentenced, which in relevant part stated:

> CHICHAKLI conspired with Viktor Bout and others to violate IEEPA by engaging in prohibited business transactions with companies based in the United States. The focus of these transactions was the purchase of commercial airplanes for a company that Bout and CHICHAKLI controlled, and the ferrying of those aircraft to Tajikistan. At the time of these unlawful transactions, both CHICHAKLI and Bout had been designated by the U.S. Treasury Department as Specially Designated Nationals ("SDNs"), which meant that individuals and businesses in the United States were prohibited from engaging in financial transactions with them. CHICHAKLI sought to evade these SDN sanctions by, among other things, concealing his identity and his SDN listing, and by concealing Viktor Bout's involvement in the airplane transactions. In connection with this fraudulent scheme, CHICHAKLI helped to make a series of wire transfer payments, totaling more than $1.7 million from overseas bank accounts into accounts in the United States.

> power, or privilege with respect to, or transactions involving, any
> property in which any foreign country or a national thereof has any
> interest *by any person, or with respect to any property, subject to
> the jurisdiction of the United States*[.]

50 U.S.C. § 1702(a)(1)(B) (emphasis added).

In accordance with IEEPA and the United Nations Participation Act, *see* 22 U.S.C. § 287c, among other statutory provisions, former President George W. Bush issued an Executive Order titled Blocking Property of Certain Persons and Prohibiting the Importation of Certain Goods from Liberia:

> I, GEORGE W. BUSH, President of the United States of America,
> note that the actions and policies of former Liberian President
> Charles Taylor and other persons, in particular their unlawful
> depletion of Liberian resources and their removal from Liberia and
> secreting of Liberian funds and property, have undermined Liberia's
> transition to democracy and the orderly development of its political,
> administrative, and economic institutions and resources.  I further
> note that the Comprehensive Peace Agreement signed on August 18,
> 2003, and the related ceasefire have not yet been universally
> implemented throughout Liberia, and that the illicit trade in round
> logs and timber products is linked to the proliferation of and
> trafficking in illegal arms, which perpetuate the Liberian conflict
> and fuel and exacerbate other conflicts throughout West Africa. I
> find that the actions, policies, and circumstances described above
> constitute an unusual and extraordinary threat to the foreign policy
> of the United States and hereby declare a national emergency to deal
> with that threat.

Exec. Order No. 13348 ("E.O. 13348" or "Order"), 69 Fed. Reg. 44885 (July 22, 2004).

Pursuant to E.O. 13348, "all property and interests in property [of persons identified in the Order] that are in the United States, that hereafter come within the United States, *or that are or hereafter come within the possession or control of United States persons*, are blocked and may not be transferred, paid, exported, withdrawn, or otherwise dealt in[.]"  E.O. 13348 § 1(a) (emphasis added).  The Order also blocked property found "to be owned or controlled by, or

acting or purporting to act for or on behalf of, directly or indirectly, any person whose property and interests in property [were] blocked pursuant to this [O]rder[.]"  E.O. 13348 § 1(a)(ii)(D).

Further, E.O. 13348 delegated to the Secretary of the Treasury the authority to promulgate regulations to carry out its purposes.  E.O. 13348 § 6.  This authority, in turn, was delegated to the Office of Foreign Assets Control ("OFAC"), Compl. ¶ 15, which promulgated regulations in 2007, *see* Former Liberian Regime of Charles Taylor Sanctions Regulations, 72 Fed. Reg. 28,855 (May 23, 2007); 31 C.F.R. Part 593.  The regulations set forth procedures by which a person subject to a Blocking Notice applies to OFAC for a license permitting a transaction which otherwise would have violated the terms of the Order.  *See* 31 C.F.R. §§ 501.801-501.803, 593.501.

The Annex to E.O. 13348 listed 28 persons, such as "the . . . former president of Liberia, his immediate family, Cabinet members, and . . .  other foreign [persons] who allegedly supported [Charles Taylor's] regime," Compl. ¶ 27, whose property and interests in property were blocked.  Among those foreign persons was Viktor Anatolijevitch Bout, whom plaintiff describes as "a Russian national who allegedly sold arms to Liberia in 2000[.]"  *Id.*; *see* E.O. 13348, Annex ¶ 2.  In April 2005, OFAC designated plaintiff a Specially Designated National ("SDN") under E.O. 13348 when, "[a]fter an investigation, OFAC determined that [plaintiff] was acting on behalf of Bout."  *Chichakli v. Szubin*, 546 F.3d 315, 316 (5th Cir. 2008).[3]  Although OFAC did not claim that plaintiff "is or was ever directly involved in Liberia with the [r]egime of Charles Taylor," Compl. ¶ 63, it nevertheless "issued a Blocking Notice subjecting [plaintiff] to the sanctions set out in the Executive Order," *Chichakli*, 546 F.3d at 316; *see* Compl. ¶¶ 29, 63.  OFAC published plaintiff's name and identifying information about him on its SDN List.

---

[3]  Treasury's April 26, 2005 press release, available at http://www.treasury.gov/press-center/press-releases/Pages/js2406.aspx, identified plaintiff as "Bout's U.S.-based chief financial officer."

*See* 75 Fed. Reg. 38212 (July 1, 2010) (most recent Federal Register publication of the then-current SDN List).  It denied plaintiff's request for reconsideration of the Blocking Notice.  *See Chichakli*, 546 F.3d at 316.

"While [Executive Order] 13348 was in effect, [plaintiff's] assets within the jurisdiction of the United States were blocked and he could conduct no business with U.S. persons or financial institutions except as authorized by license."  Mem. of P. & A. in Support of Official Capacity Defs.' Mot. to Dismiss ("Defs.' Mem.") at 4.  According to defendants, "OFAC has granted more than fifteen of [plaintiff's] license requests," which allowed him access to blocked funds in order that plaintiff could conduct "transactions related to [his] maintenance, specifically the ability to purchase food, clothing and other items."  Defs.' Mem. at 5.

On November 12, 2015, former President Barack H. Obama issued Executive Order 13710 which terminated the national emergency with respect to Liberia.  *See* Termination of Emergency with Respect to the Actions and Policies of Former Liberian President Charles Taylor, Exec. Order 13710, 80 Fed. Reg. 71,679 (Nov. 12, 2015).  Subsequently, OFAC removed plaintiff from the SDN List and published a notice listing "the entries which [were] being removed from the SDN List in order to effectuate the removal."  Defs.' Mem. at 7.[4] Accordingly, defendants have represented, plaintiff "is no longer a Blocked Person [and no longer is] subject [to] the allegedly improper Liberia regulations," and therefore "no longer requires a license from OFAC to conduct transactions."  Reply Mem. of P. & A. in Support of Official Capacity Defs.' Mot. to Dismiss ("Reply") at 4-5.  OFAC has provided instructions to plaintiff for the retrieval of his unblocked property.  *See generally id.*, Ex. 1 (Letter to plaintiff from Jeremy R. Sausser, Acting Assistant Director, Enforcement, OFAC, dated April 18, 2016)

---

[4] *See* Liberia Designation Removals and Updates, U.S. Dep't of the Treasury (Nov. 12, 2015), *available at* http://www.treasury.gov/resource-center/sanctions/OFAC-Enforcement/Pages/20151112.aspx.

(exhibit number designated by the Court).  Further, OFAC informed plaintiff that "[a]pplicable regulations do not provide for . . . inventories and accountings to be created, maintained, or provided."  *Id*., Ex. 1 at 2.

### B. Civil Action No. 3:06-cv-1546-N

In 2006, plaintiff, by counsel, filed a civil action in the United States District Court for the Northern District of Texas challenging the actions of OFAC, its former Director Adam Szubin, and the former Secretaries of State and Treasury under E.O. 13348 and the IEEPA.  *See* Complaint, *Chichakli v. Szubin*, No. 3:06CV1546 (N.D. Tex. filed Aug. 25, 2006) ("Texas Complaint") ¶¶ 1, 7-9.  He alleged that federal officials "raided" his home, his office, and an employee's home on April 26, 2005.  *Id*. ¶ 14.  "A search warrant was presented" for plaintiff's homes in Richardson, Texas and for his office; a second home in Plano, Texas "was entered and searched without a warrant."  *Id*.  Plaintiff alleged that "property was seized by the FBI from all three locations."  *Id*.  OFAC agents left plaintiff with a copy of Special Designation and Blocking Memorandum stating

> [T]here was reason to believe that [plaintiff, other individuals and 30 corporate entities] (a) are owned or controlled by, or acting or purporting to act for or on behalf of, directly or indirectly, a person whose property and interests in property are blocked pursuant to [E.O. 13348], namely Viktor Bout; and/or (b) have materially assisted, sponsored, provided financial, material, or technological support for, or goods or services in support of, the unlawful depletion of Liberian resources, the removal of Liberian resources from that country, and the secreting of Liberian funds and property by any person whose property and interests in property are blocked pursuant to [E.O. 13348], or (c) are owned or controlled by, or act for or on behalf of, persons designated in or pursuant to [E.O. 13348], and therefore are designated as Specially Designated [Nationals.]

*Id*. ¶ 15.  Among the 30 corporate entities mentioned in the Blocking Notice were 11 companies controlled by or affiliated with plaintiff.  *See id*. ¶ 16.

Plaintiff first alleged a deprivation of property without due process in violation of the Fifth Amendment.  *See id*. at 6-7 (First Cause of Action).  The district court found that plaintiff's SDN designation did not run afoul of the Fifth Amendment: because there were exigent circumstances, he was not entitled to pre-designation notice, and his opportunity to seek reconsideration post-designation satisfied due process requirements.  Order, *Chichakli v. Szubin*, No. 3:06CV1546 (N.D. Tex. filed June 4, 2007) ("Texas Order") at 5-8.  Second, plaintiff alleged that the blocking of his assets amounted to a taking without just compensation in violation of the Fifth Amendment.  *See* Texas Complaint at 7 (Second Cause of Action).  The court rejected this argument.  It ruled that, because the temporary deprivation of assets did not vest the assets in the government, the blocking of plaintiff's assets was not a taking under the Fifth Amendment.  *See* Texas Order at 8.

Third, plaintiff challenged his SDN designation on the ground that no unusual or extraordinary threat regarding Liberia remained by the time he filed suit approximately 16 months after OFAC issued the Blocking Notice.  Texas Complaint at 8 (Fourth Cause of Action).  The court deemed the claim "a "nonjusticiable political question" and dismissed it.  Texas Order at 9.  Last, plaintiff alleged that defendants' "action in [their] arbitrary, capricious, and abusive discretion [was] unsupported by substantial evidence, and unwarranted by the facts."  Texas Complaint at 7 (Third Cause of Action).  According to plaintiff, defendants "seized and [were] secreting properties without an accounting[,]" they "attempt[ed] to destroy [p]laintiff's real property holdings[,]" and they "forced the sale of properties."  *Id*. at 7-8.  The court reviewed the administrative record and found ample support for the SDN designation:

> Substantial evidence in the record reveals that [plaintiff] held senior
> level positions in several corporations that OFAC identified as
> connected to or controlled by Viktor Bout.  Furthermore, the record
> indicates that [plaintiff] had a close working relationship with Bout
> and had substantial knowledge of Bout's business.  OFAC therefore
> had a reasonable basis for believing that [plaintiff] acted for or on
> behalf of Bout.

*Id*. at 10.

On appeal, the United States Court of Appeals for the Fifth Circuit "vacate[d] the district court's judgment as it relate[d] to [plaintiff's] takings claim under the Fifth Amendment." *Chichakli*, 546 F.3d at 317.  Because plaintiff's claim exceeded $10,000, it fell under the exclusive jurisdiction of the United States Court of Federal Claims.  *Id*.  In all other respects, the Fifth Circuit affirmed the district court's judgment.  *Id*. at 317-18.  Plaintiff was not deprived of due process, *see id*. at 317, and "OFAC did not act in an arbitrary and capricious manner in determining that Chichakli acted for or on behalf of Viktor Bout," *id*. at 318.

## C. Plaintiff's Factual Allegations and Legal Claims

### 1. Freedom of Speech and Association

Plaintiff admits to having communicated regularly with Viktor Bout, *see* Compl. ¶ 60, having "spoke[n] to the media" about Bout and the allegations made against him, *id*. ¶ 63, and having "solicited legal representation" for Bout, *id*. ¶ 58.  He contends that OFAC blocked his assets, *id*. ¶ 23, because of his association with and advocacy on Bout's behalf, in violation of his First Amendment rights to free speech and free association.  *See id*. ¶¶ 6, 8(c), 24, 58-59, 63.

### 2. Warrantless Seizure of Property

Plaintiff considers the blocking of his property, all of which was "U.S. based[,] sourced, owned, and domiciled," *id*. ¶ 32, a warrantless seizure in violation of the Fourth Amendment, *see*

*id*. ¶¶ 6, 22-23.  He alleges that "[t]he blocking by OFAC 'completely eliminated all economical values of plaintiff's property' by destroying the businesses beyond the point of possibility of repair."  *Id*. ¶ 33 (emphasis removed).  Further, he alleges that the "[s]eizure was carried out without any notice . . . to 'prevent the selling, disposition, or transfer of the assets which OFAC intended to seize.'"  *Id*. ¶ 57.  Thus, OFAC allegedly is responsible for the abrupt closure of his businesses, seizure of plaintiff's bank accounts, jewelry, personal items, home furnishings, vehicles, business-related documents and equipment, unpaid taxes and debts, and cancelled life and health insurance policies.  *See id*. ¶¶ 33, 40, 44.

In addition, plaintiff alleges that he could not "conduct[] any transaction with any U.S. person or within the U.S. unless licensed for each and every singular transaction," *id*. ¶ 36, "regardless of the size, nature or the place" of the transaction, *id*. ¶ 44(g).  Upon the loss of his businesses and revocation of his CPA license, *see id*. ¶ 44(c), 44(i), plaintiff alleges that he was unable to "work[] to earn a living," *id*. ¶ 44(h) (emphasis removed), support his family, *id*. ¶ 46, or receive "any financial assistance from friends,  . . . family, . . . any source within the United States, or from any US person," *id*. ¶ 44(j); *see id*. ¶ 46.  Nor could plaintiff pay for medical care, *see id*. ¶¶ 40-41, or pay for his child's education, *see id*. ¶ 41, without first enduring OFAC's "cumbersome, exhaustive, and . . . inefficient" license application process.  To date, plaintiff alleges, OFAC has not provided him with an inventory or accounting of the assets seized.  *Id*. ¶ 44(d).

### 3. Cruel and Unusual Punishment

Under the umbrella of "cruel and unusual punishment," the Court understands plaintiff to raise objections not only to the Blocking Notice itself but also the enforcement of the Blocking Notice.  First, plaintiff is "challenging the authority to designate him," *id*. ¶ 54, under IEEPA and

E.O. 13348 on the ground that neither applies to a United States citizen and to the property of a United States citizen, *see id.* ¶¶ 9-14, 32.  Second, plaintiff challenges the application of regulations OFAC promulgated in 2007, roughly two years after OFAC issued the April 2005 Blocking Notice.  *See id.* ¶¶ 5, 30, 54.  He alleges that the regulations are applied retroactively and that they are vague, overbroad, and therefore unenforceable, *see id.* ¶¶ 65-66, 68.  Third, plaintiff objects to the absence of time and dollar limits, such that the sanctions and the hardships they impose are of infinite duration and cost.  *See id.* ¶¶ 8, 20, 25, 33-34.  Fourth, plaintiff objects to the cumbersome and lengthy process necessary to obtain each license from OFAC, *see id.* ¶¶ 44(h), 48, and the arbitrary and subjective manner OFAC makes its decisions to grant or deny license applications, *see id.* ¶¶ 39, 43.  Fifth, plaintiff contends that neither E.O. 13348 nor IEEPA authorized the liquidation of his assets by OFAC.  *See id.* ¶ 24.

Plaintiff brings this action against the President of the United States, the Secretary of the Treasury, and OFAC's Director in their official capacities.  *See id.* at 1 (caption).  In addition, plaintiff sues Adam Szubin, former OFAC Director, in his individual capacity.  *Id.*; *see id.* ¶ 19.  Plaintiff demands a declaratory judgment, injunctive relief, and an award of $ 250 million.  *See generally id.* at 19-20.

## D.  Remand

The district court dismissed plaintiff's complaint *sua sponte* as procedurally barred, and plaintiff appealed.  *See Chichakli v. Obama*, No. 1:14-CV-02018, 2014 WL 6755680, at *2 (D.D.C. Nov. 25, 2014), *aff'd in part and vacated in part*, 617 F. App'x 3 (D.C. Cir. 2015) (per curiam).  The United States Court of Appeals for the District of Columbia Circuit affirmed dismissal of plaintiff's "challenge [to] the Blocking Notice issued by the Office of Foreign

Assets Control (OFAC) on April [26], 2005." *Chichakli*, 617 F. App'x at 3.  However, it found

that the district court erred in dismissing the case in its entirety:

> [T]he district court's opinion did not explicitly address the
> complaint's additional allegations including, for example, that (1)
> the application of 2007 regulations implementing Executive Order
> 13348 violates the Ex Post Facto Clause or has an impermissible
> retroactive effect, and (2) OFAC has not properly handled
> [plaintiff's] license applications for the release of blocked funds.

*Id.* at 4.  This court was instructed "to consider the full breadth of [plaintiff's] claims" on

remand.  *Id.*

## II. DISCUSSION

### A. Claim Preclusion (Res Judicata)

Generally, a plaintiff is expected to "present in one suit all the claims for relief that he

may have arising out of the same transaction or occurrence."  *U.S. Indus., Inc. v. Blake Constr.

Co., Inc.*, 765 F.2d 195, 205 (D.C. Cir. 1985) (citation omitted).  "Under claim preclusion, a final

judgment on the merits of an action precludes the parties or their privies from relitigating issues

that were or could have been raised in [a prior] action."  *Sheppard v. District of Columbia*, 791 F.

Supp. 2d 1, 4 (D.D.C. 2011) (quoting *Drake v. FAA*, 291 F.3d 59, 66 (D.C. Cir. 2002)) (internal

quotation marks and additional citation omitted); *see New Hampshire v. Maine*, 532 U.S. 742,

748 (2001) ("Claim preclusion generally refers to the effect of a prior judgment in foreclosing

successive litigation of the very same claim, whether or not relitigation of the claim raises the

same issues as the earlier suit.").  Two claims need not be "literally identical claims for res

judicata to apply."  *Capitol Hill Grp. v. Pillsbury Winthrop Shaw Pittman, LLP*, 574 F. Supp. 2d

143, 149 (D.D.C. 2008), *aff'd sub nom. Capitol Hill Grp. v. Pillsbury, Winthrop, Shaw, Pittman,

LLC*, 569 F.3d 485 (D.C. Cir. 2009).  Parties are thus prevented from relitigating in a separate

proceeding "any ground for relief which they already have had an opportunity to litigate[,] even if they chose not to exploit that opportunity," and regardless of the soundness of the earlier judgment. *Hardison v. Alexander*, 655 F.2d 1281, 1288 (D.C. Cir. 1981); *I.A.M. Nat'l Pension Fund v. Indus. Gear Mfg.Co.*, 723 F.2d 944, 949 (D.C. Cir. 1983) (noting that *res judicata* "forecloses all that which might have been litigated previously").

The D.C. Circuit upheld the district court's initial determination that plaintiff's "claims are barred by res judicata . . . insofar as they challenge the Blocking Notice issued by the Office of Foreign Assets Control (OFAC) on April [26], 2005[.]" *Chichakli*, 617 F. App'x at 4. Coupled with the Fifth Circuit's determination that the SDN designation was supported by the evidence in the administrative record, it is apparent that nearly all of plaintiff's claims are precluded.

Plaintiff has had an opportunity to challenge defendants' actions under IEEPA and E.O. 13348. Through his lawsuit in the United States District Court for the Northern District of Texas, plaintiff has challenged the SDN designation itself, the destruction of his business, the seizure of his property without an accounting, the destruction of his real estate holdings and the forced sale of properties. At that time, he could have claimed as he does now that (1) the IEEPA does not apply to a United States citizen or to the property of a United States citizen; (2) his SDN designation was predicated upon his association with Viktor Bout, such that defendants imposed sanctions based solely on plaintiff's exercise of rights under the First Amendment; (3) the blocking of plaintiff's assets amounted to a warrantless search in violation of the Fourth Amendment; and (4) the indefinite length of time the Blocking Notice was in effect and the limitless dollar value of assets blocked violated the Eighth Amendment. And because plaintiff knew "[w]ithin the first month of imposing the sanction OFAC destroyed [his] businesses

12

beyond repair, and eliminated the economic value of his assets," he could have demanded compensation for the "millions of dollars in tangible, intangible, and economic" losses he allegedly sustained when OFAC liquidated the blocked assets, Pl.'s Response in Opp'n to Defs.' Mot. to Dismiss ("Pl.'s Opp'n") at 13 (page numbers designated by ECF).  Also, he could have challenged OFAC's authority to liquidate blocked assets, *see id.* at 10, and asserted a right to an inventory of the assets OFAC seized, liquidated or blocked, *see id.* at 4-5; Compl. ¶¶ 44c-3, 44(d).  Furthermore, plaintiff could have brought a constitutional claim against defendant Szubin in his individual capacity in the prior action.[5]  For this reason, the Court need not consider plaintiff's belated attempt to flesh out his purported claim against Szubin under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).[6]

The D.C. Circuit's instruction to consider the full breadth of plaintiff's claims is not an invitation to raise new claims that plaintiff failed to raise in the Norther District of Texas and his original complaint in this case.  Plaintiff "cannot escape application of the [claim preclusion] doctrine by raising a different legal theory or seeking a different remedy in the new action that was available to [him] in the prior action."  *Duma v. JPMorgan Chase*, 828 F. Supp. 2d 83, 86 (D.D.C. 2011) (citations omitted), *aff'd sub nom. Duma v. JPMorgan Chase & Co.*, No. 11-7147, 2012 WL 1450548 (D.C. Cir. Apr. 20, 2012); *see Apotex, Inc. v. FDA*, 393 F.3d 210, 217-18 (D.C. Cir. 2004) ("There are no new facts.  Apotex is simply raising a new legal theory.  This is precisely what is barred by *res judicata*.").

---

[5]  Plaintiff is proceeding *pro se* and *in forma pauperis*.  In these circumstances, "the officers of the court issue and serve all process."  28 U.S.C. § 1915 (d); *see* Fed. R. Civ. P. 4(c)(3).  Although none of the defendants appears to have been served, the Court will deny defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(b)(5) for failure to effect proper service.

[6]  *See generally* Supplement to Pl.'s Original Compl. Against Adam Szubin Individually in his Personal Capacity [ECF No. 21],

## B. *Ex Post Facto Claim*

Plaintiff makes much of the fact that, at the time OFAC issued the Blocking Notice on April 26, 2005, there existed no regulations to implement E.O. 13348.  He contends that, without regulations, OFAC had no authority to issue the Blocking Notice and to block his assets.

Defendants' response is twofold.  They posit that "[p]laintiff's '*ex post facto*' allegations simply seem to indicate that the implementing regulation was required to enforce the executive order."  Defs.' Mem. at 17.  If so, defendants understand the claim as "just a challenge to the Blocking Order and the adequacy of implementing regulations at the time of the blocking.  To that extent, it is a challenge to the designation and blocking that could have been raised at the time of the blocking."  *Id*.  Further, defendants contend that "the 2007 regulations are not impermissibly retroactive as a matter of law."  *Id*. at 18.  According to defendants, OFAC neither imposes a criminal punishment in making a designation pursuant to E.O. 13348, nor applies its 2007 regulations retroactively.  *See id*.  OFAC designated plaintiff "under the terms of the executive order, the substantive terms of which are identical to the terms of the regulation."  *Id*.

Plaintiff responds by referring to the IEEPA's criminal penalty provision, *see* 50 U.S.C. § 1705, and deems it "[n]onsense[]" for defendants to argue that "IEEPA does not define crime."  Pl.'s Opp'n at 13.  Furthermore, he contends, "[u]pon the issuance of the regulation in 2007 OFAC used the Post-Ex-Facto [sic] regulations to justify the earlier abuses."  *Id*. at 9.

The Court concludes that plaintiff's ex post facto claim must be dismissed.  The United States Constitution prohibits any State from passing an "ex post facto Law."  U.S. Const. art. 1, § 9, cl.3.  The clause "is aimed at laws that 'retroactively alter the definition of crimes or increase the punishment for criminal acts.'"  *Cal. Dep't of Corr. v. Morales*, 514 U.S. 499, 504 (1995) (quoting *Collins v. Youngblood*, 497 U.S. 31, 43 (1990)).  It is apparent that IEEPA defines

criminal conduct and that plaintiff has been convicted of such conduct under 50 U.S.C. § 1705 and 18 U.S.C. § 371.  Here, however, the focus is on OFAC's SDN designation.  The Fifth Circuit found no fault with the SDN designation itself, and plaintiff cannot now challenge the designation under a new legal theory.

It cannot be said that the 2007 regulations have been applied retroactively or otherwise have an impermissible retroactive effect.  The Court notes that the language of E.O. 13348 and the corresponding regulation is virtually identical.  *Compare* 31 C.F.R. § 593.201(a)(2)(iv), with E.O. 13348 § 1(a)(ii)(D).  If plaintiff violated E.O. 13348, as OFAC determined and the Fifth Circuit upheld, plaintiff's conduct necessarily would have violated the implementing regulations. *Cf. United States v. Arch Trading Co.*, 987 F.2d 1087, 1094-95 (4th Cir. 1993).

Lastly, the Court no longer has subject matter jurisdiction over the ex post facto claim. The Court's jurisdiction depends on the existence of an actual case or controversy.  *See Preiser v. Newkirk*, 422 U.S. 395, 401 (1975); *Am. Bar Ass'n v. FTC*, 636 F.3d 641, 645 (D.C. Cir. 2011).  As defendants indicate, "[p]laintiff is no longer a Blocked Person and thus is not the subject of the allegedly improper Liberia regulations."  Defs.' Mem. at 13.  "[A]n actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Preiser*, 422 U.S. at 401.  Here, developments subsequent to the filing of this case and the D.C. Circuit's remand render plaintiff's ex post facto claim moot.  The national emergency with respect to Liberia has ended, and the Order pursuant to which OFAC issued the Blocking Notice no longer is in effect.  Now that defendants' challenged conduct has ceased, the Court is without means "to grant any effectual relief whatever to [plaintiff]."  *Del Monte Fresh Produce Co. v.*

*United States*, 570 F.3d 316, 321 (D.C. Cir. 2009) (internal quotation marks and citations

omitted).[7]

### C. Claim Regarding the Handling of License Applications

Suffice it to say that plaintiff's claim regarding OFAC's handling of his license

applications is unclear.  He complains of inefficiency, inconvenience, delay, and the arbitrary

nature of OFAC's decisions.  If plaintiff were raising a claim under the Administrative Procedure

Act on the ground that OFAC's decisions were arbitrary and capricious, neither the Court nor

defendants can determine the particular decision or decisions at issue.  Even if plaintiff had

stated a viable legal claim, it does not appear that he demands any particular form of relief.

In the end, this claim must be dismissed as it is precluded and it is moot.  Plaintiff had an

opportunity to challenge OFAC's handling of his license applications when he brought the prior

civil action in the Northern District of Texas.  He chose not to do so, and now the claim is

barred.  And because plaintiff no longer is a Blocked Person subject to sanctions under IEEPA

and E.O. 13348, he no longer must obtain a license from OFAC for access to or use of his assets.

It appears, then, that this claim is moot.

### D. Demand for Monetary Damages

"It is elementary that the United States, as sovereign, is immune from suit save as it

consents to be sued . . . , and the terms of its consent to be sued in any court define that court's

---

[7]  Plaintiff maintains that "OFAC is still blocking plaintiff's assets," and that it "still refuse[s] to deliver plaintiff's
cash and non-cash assets which are still held."  Pl.'s Opp'n at 4; *see id*. at 5-6.  The Court notes that plaintiff left the
United States shortly after his SDN designation, returned to the United States in 2013 following his apprehension in
and extradition from Australia, *see United States v. Chichakli*, No. 09CR1002, 2014 WL 5369424, at *1 (S.D.N.Y.
Oct. 16, 2014), and was incarcerated when the national emergency ended and when OFAC unblocked the assets.
Plaintiff's purported inability to retrieve his property from OFAC may be due to these circumstances rather than to
OFAC's alleged misdeeds.

jurisdiction to entertain the suit."  *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941) (internal quotation marks omitted)); *FDIC v. Meyer*, 510 U.S. 471, 475 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit.").  Sovereign immunity extends to government agencies and to their employees where such employees are sued in their official capacities.  *See Meyer*, 510 U.S. at 483-86; *Clark v. Library of Congress*, 750 F.2d 89, 103 (D.C. Cir. 1984) ("Sovereign immunity . . . bar[s] suits for money damages against officials in their *official* capacity absent a specific waiver by the government.").  "To sustain a claim that the Government is liable for awards of monetary damages, the waiver of sovereign immunity must extend unambiguously to such monetary claims."  *Lane v. Peña*, 518 U.S. 187, 192 (1996) (citation omitted).  Defendants move to dismiss on the ground that plaintiff "has identified no waiver of sovereign immunity that would permit a suit for damages under either the *ex post facto* clause or a challenging to [OFAC's] licensing decisions."  Defs.' Mem. at 10.

Plaintiff responds by "asserting that this Court lacks jurisdiction over his money-damages claims against the United States."  Pl.'s Opp'n  at 3.  Rather, he contends that "[j]urisdiction over money damages claims against the United States Government, in amounts of [$10,000] or [more] rests exclusively [with] the United States Court of [F]ederal Claims."  *Id*. (emphasis removed).  According to plaintiff, "OFAC . . . misappropriated, took and plundered his assets in violation of [his] constitutional rights," *id*., and he proposes "to amend his complaint to include the[se] recently discovered violations," *id*.  Further, plaintiff states his intention to proceed with his money damages claim in "a separate lawsuit against the defendants before the United States Court of [F]ederal Claims[.]"  *Id*.

There are significant obstacles to plaintiff's proposed course of action.  First, amendment of his complaint to include a new claim "in the millions of dollars," *id.*, is futile because this Court lacks subject matter jurisdiction over a "civil action or claim against the United States . . . exceeding $10,000 in amount."   28 U.S.C. § 1346(a)(2).  Second, because any money damages claim plaintiff may have arising from the April 2005 Blocking Notice should have been brought in the Court of Federal Claims "within six years after [it] accrues,"  28 U.S.C. § 2501, his claim is likely to be considered time-barred by the Court of Federal Claims, *see Martinez v. United States*, 333 F.3d 1295, 1316 (Fed. Cir. 2003) (commenting that "statutes of limitations for causes of action against the United States, being conditions on the waiver of sovereign immunity, are jurisdictional in nature").

## III. CONCLUSION

The Court lacks subject matter jurisdiction over plaintiff's claim for monetary damages, and the complaint otherwise fails to state claims upon which relief can be granted. Therefore, defendants' motion to dismiss will be granted.  An Order is issued separately.

DATE:  March 16, 2017                    /s/
                                       COLLEEN KOLLAR KOTELLY
                                       United States District Court Judge